**Affirmed as Modified and Dissenting Opinion filed June 27, 2019.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-18-01039-CV

## IN THE INTEREST OF L.A.J., A CHILD, Appellant

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2017-05553J**

## DISSENTING OPINION

Because I disagree that the Department met its burden of proving by clear and convincing evidence that termination of Mother's parental rights is in Levi's best interest, I respectfully dissent. We are to strictly scrutinize involuntary termination proceedings and statutes in the parent's favor. The majority fails to do so here.

The termination of parental rights involves fundamental constitutional rights. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re*

*K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). We are bound to strictly scrutinize termination proceedings and must strictly construe involuntary termination statutes in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). Keeping in mind the elevated burden of proof, as well as the non-exclusive factors enunciated in *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976), I would conclude the trial court's finding that termination is in Levi's best interest is not supported by clear and convincing evidence. Considering, as we must, evidence that both supports and contradicts the finding, I would conclude there is not factually sufficient evidence to support the finding. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

The Department first intervened in Levi's life when he was born. There is evidence in the record that he was born at 34 weeks gestation and evidence that he was born at 37 weeks gestation. Therefore, there is contradicting evidence as to whether Levi was born prematurely. There is no evidence that Levi was born prematurely because of any actions by Mother. Mother told the investigator that she had eaten cookies at a Halloween party that she later discovered were laced with marijuana. Levi did not suffer from any withdrawal symptoms or complications.

Mother's own involvement with the Department began at a similarly young age. Although the specific circumstances are unknown, we do know that Mother was in the foster care system as a young child, adopted into a family around the age of two, and was diagnosed with post-traumatic stress disorder from her experiences growing up in the foster care system.

Mother has four other children who live with Father in Dallas. Although Mother and Father are estranged, Mother maintains regular contact with the four children. Financial circumstances have prevented her from visiting them in person.

Throughout the pendency of the case, Mother provided the Department with several phone numbers for Father. However, the Department was unable to make contact with him. While the current case does not involve any of the four children, the Department presented evidence that it had prior investigations concerning those children. The record is unclear as to whether the prior investigations were closed because they were resolved or unable to be completed. What is undisputed, however, is that at the time of trial, the Department did not have a current open case regarding the other four children.

By the trial date, Mother had completed all of her court-ordered treatment and therapy appointments except for one therapy session that had been rescheduled because the therapist needed surgery. Mother had completed an additional class that was not part of her plan but had been recommended by her counselor. She had also discussed after-care appointments with her therapist so that she could continue with her therapy and treatment after her court-ordered service plan was completed.

Mother provided the court with proof of employment and with proof of housing. Mother testified that she was planning to continue her education to better herself and to help her children. Mother had stable employment, had explored daycare options for Levi, had a stable support network, had attended therapy beyond what was ordered on her family service plan, and had even planned to continue after-care with her therapist. Despite Mother's financial struggles, she was able to set herself up with stable housing and employment. In short, Mother exhibited both willingness and ability to improve her life for herself and for her children.

The Department was required to prove by clear and convincing evidence not only that Mother engaged in an act or omission listed in subsection 161.001(b)(1) but also that termination is in Levi's best interest. *See* Tex. Fam. Code

3

§ 161.001(b)(1)–(2); *In re E.N.C.,* 384 S.W.3d at 802. Proof of one element does not alleviate the Department's burden of proving the other. Tex. Fam. Code § 161.001(b)(1)–(2). There is a strong presumption that preserving the parent-child relationship is in the child's best interest, and "the best interest standard does not permit termination merely because a child might be better off living elsewhere. Termination should not be used to merely reallocate children to better and more prosperous parents." *In re W.C.*, 98 S.W.3d 753, 758 (Tex. App.—Fort Worth 2003, no pet.); *see also In re J.F.C.*, 96 S.W.3d 256, 294 (Tex. 2002) (Hankinson, J., dissenting).

In reviewing all of the evidence, including evidence that is contrary to the trial court's findings, I consider the following evidence to be particularly compelling:

1. Mother's marijuana levels steadily decreased, and she had no urinalysis test results that were positive for marijuana after January of 2018;

2. Mother regularly visited Levi, and her visits were appropriate;

3. Mother actively engaged in her therapy sessions and completed classes beyond what was ordered on her family service plan;

4. Mother had provided proof of employment and proof of housing to the court;

5. Mother had explored daycare options for Levi; and

6. Mother had plans to continue her education to better herself and her children.

Considering the *Holley* factors and reviewing all the evidence in the record before us, I would conclude that the Department failed to meet its burden to establish by clear and convincing evidence that termination of Mother's parental

4

rights is in Levi's best interest. *See Holley,* 544 S.W.2d at 371–72 (listing factors). I therefore disagree that the trial court could have reasonably formed a firm belief or conviction that termination of Mother's parental rights was in Levi's best interest. *See* Tex. Fam. Code. § 161.001(b)(2); *In re E.N.C.,* 384 S.W.3d at 809; *In re J.F.C.,* 96 S.W.3d at 266, 272; *see also In re K.C.M.,* 4 S.W.3d 392, 399 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (holding evidence factually insufficient to support trial court's determination that termination was in child's best interest when it was undisputed that mother had been drug-free and sober for 10 months preceding trial and that she had "turned her life around" while in jail, including completing her GED and parenting and life skills courses), *disapproved of on other groundsby In re C.H.*, 89 S.W.3d 17 (Tex. 2002).

In examining the first *Holley* factor, the child's desires, the majority concludes that Mother's visitation difficulties and the fact that she never had custody of Levi weighs in favor of termination. I respectfully disagree. At the time of trial, Levi was eleven months old and unable to communicate his wishes. Mother did have some difficulty with her visitation schedule due to her transportation issues and work schedule. However, she visited Levi regularly, and the caseworker testified that the visits were appropriate. If we are to presume that keeping a child with his natural parent is in the best interest of the child absent clear and convincing evidence to the contrary, this factor is, at best, neutral.

The next *Holley* factors are the emotional and physical needs of the child now and in the future and the emotional and physical danger to the child now and in the future. There was no evidence regarding any future danger that Levi would suffer at the hands of his mother other than speculation by the Department that is based, in large part, on Mother's early drug test results and the Department's inability to contact Father and the four other children. Given the elevated burden of

5

proof in termination cases, I cannot conclude that such testimony amounts to clear and convincing evidence that Mother is unable to meet her child's needs or that she presents a danger to him. *See* Tex. Fam. Code § 161.001(b)(2) (trial court's best-interest finding must be supported by clear and convincing evidence in the record); *In re E.N.C.,* 384 S.W.3d at 808 (holding that lack of evidence cannot "contradict a finding as if it were evidence supporting a finding"). Based on the lack of evidence concerning any recent issues and the consistent strides Mother made to improve her situation, the trial court could not reasonably infer that Mother's past conduct would reoccur in the future so as to prevent her from providing Levi with a stable home. I would conclude that these factors weigh against the conclusion that termination is in Levi's best interest.

Turning next to the parental abilities of the individuals seeking custody, the Department failed to show that Mother would not be able to meet Levi's needs. Mother's counselor told the caseworker that Mother was an active participant in her therapy and that she had demonstrated significant progress in treatment, had demonstrated values as a mother, and had gained the necessary tools to successfully live a healthy lifestyle. I would conclude that this factor also weighs against the conclusion that termination is in Levi's best interest.

The next *Holley* factors are Mother's plans for Levi and the stability of the proposed home. Mother provided evidence of employment and housing. She also testified about her future plans to pursue higher education and demonstrated that she had been planning ahead for Levi's care. The Department did not present any evidence to refute this testimony. Given that the Department failed to show that either Mother's future plans for Levi or her home were inappropriate or unsuitable, I would conclude that these factors also weigh against termination.

Next, we turn to the plans for the child by the agency seeking custody and

6

the stability of the proposed placement. The evidence introduced at trial reflects favorably on the foster care placement. The caseworker testified that Levi was happy, bonded, and well-adjusted to his foster family and that the foster family wished to adopt him if reunification was not achieved. Mother also presented evidence of her rehabilitation, including therapy, housing, and employment. Although these factors could be viewed as weighing in favor of termination, I would consider them to be neutral given that the "best-interest standard does not permit termination merely because a child might be better off living elsewhere." *See In re M.G.D.*, 108 S.W.3d 508, 528 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (Frost, J., concurring).

Finally, we consider the acts or omissions of the parent that indicate the parent-child relationship is improper, as well as any excuses for the behavior. Mother recognized that her living situation, employment situation, and drug test results were harmful to maintaining her relationship with Levi so she worked to complete all of the court-ordered services, which included therapy, treatment, and counseling. She participated in counseling services beyond what was ordered by the court and provided the court with proof of employment and housing. When considering the best interest of the child, evidence of a recent turnaround in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the past. *Id.* at 513–14. Here, however, Mother steadily improved and complied with the court-ordered plan for reunification; thus, I would find this factor weighs against termination.

Considering the dramatic improvements that Mother made in terms of her ability to care for Levi's physical and emotional needs, I would find that there was factually insufficient evidence to support the trial court's finding that termination was in Levi's best interest.


/s/    Frances Bourliot
        Justice


Panel consists of Justices Christopher, Bourliot, and Zimmerer (Zimmerer, J., concurring as to result only) (Bourliot, J., dissenting).